NICHOLAS J. BOOS (SBN 233399)
nboos@maynardnexsen.com
JAMES J. HOCKEL (SBN 340612)
jhockel@maynardnexsen.com
MAYNARD NEXSEN LLP
201 California Street, Suite 400
San Francisco, California 94111
Telephone: (415) 646-4700
Facsimile: (205) 254-1999

*Attorneys for Plaintiff*
*Helmsman Management Services LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HELMSMAN MANAGEMENT SERVICES LLC,<br><br>Plaintiff,<br><br>v.<br><br>YADAV ENTERPRISES, INC.,<br><br>Defendant. | Case No. 3:24-CV-04750-JD<br><br>*Hon. James Donato*<br><br>**PLAINTIFF HELMSMAN MANAGEMENT SERVICES LLC'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[filed concurrently with Declaration of Kayla Ellis; Proposed Order]*<br><br>Date: September 10, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11 - 19th Floor<br><br>Complaint: August 6, 2024 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 10, 2026 at 11:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 11 of the Phillip Burton Federal Building, located at 450 Golden Gate Avenue, San Francisco, CA 94102, 19th Floor, Plaintiff Helmsman Management Services LLC ("Plaintiff"), will and hereby does move the Court for default judgment in its favor and against Defendant Yadav Enterprises, Inc. ("Defendant") in the amount of $402,303.92 in principal, plus contractual late fees of $226,026.49 plus $198.39 per day after August 6, 2026.

This motion is based on this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the Declaration of Kayla Ellis and attached exhibits, the pleadings and papers on file in this action, and on such further oral and documentary evidence that may be properly presented to the Court at the hearing of this motion.

Dated: August 6, 2026

MAYNARD NEXSEN LLP

By: */s/ James J. Hockel*
NICHOLAS J. BOOS
JAMES J. HOCKEL

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The sole claim in this action, for breach of contract, arises out of a Helmsman Service Agreement ("HSA")—otherwise known as a Claims Administration Agreement—which, inclusive of addenda and amendments, governed the relationship between Plaintiff Helmsman Management Services, LLC ("Plaintiff") and Defendant Yadav Enterprises, Inc. ("Defendant"). Under the HSA, Plaintiff provided duties in administering and resolving claims for which it would be compensated. Over the period May 6, 2022 through November 2, 2023, Defendant incurred charges calculated pursuant to the HSA. While Defendant made some payments, $402,303.92 of the charges remained, and still remain, unpaid. Plaintiff demanded Defendant pay the outstanding balance, but Defendant refused. Defendant's failure to pay the outstanding amount is a breach of the HSA. Further, under the HSA, Defendant agreed to pay a late payment charge of 1.5% on all overdue balances. Plaintiff is entitled to this amount too, which—as of August 6, 2026—is $226,026.49.

Plaintiff filed a Motion for Summary Judgment, but Defendant failed to respond to the Motion. The Court ordered: "Plaintiff Helmsman Management Services may file a request for Clerk's entry of default, followed by a motion for default judgment after entry." *See* Doc. No. 29. Plaintiff requested entry of default on July 5, 2026. *See* Doc. No. 30. The Clerk entered the default of Defendant on July 20, 2026. *See* Doc. No. 31. Plaintiff now asks the Court to enter default judgment.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiff is entitled to a default judgment against Defendant.
2. The amount of damages to which Plaintiff is entitled.

## III. STATEMENT OF FACTS

### A. The HSA

Plaintiff and Defendant entered into the HSA with an effective date of November 1, 2016. (Declaration of Kayla Ellis ("Ellis Decl."), ¶ 3, Ex. A, HEL000001.) The purpose of the HSA was for Plaintiff to "perform certain duties with respect to administering and resolving Claims that [Defendant] or its insurance carrier would otherwise have the right or duty to perform[.]" (*Id.*, HEL000002.) The HSA noted that Defendant was self insured and that the line of business at issue was general liability.

(*Id.* HEL000001.) It also noted Helmsman Management Services LLC's Boston, Massachusetts address, which is where Plaintiff is headquartered. (*Id.*, HEL000001); (Ellis Decl., ¶ 10.)

The HSA included the following definitions:

> A. **Allocated Loss Adjustment Expenses** or "**ALAE**" means al expenses or fees allocable to a specific Claim including but not limited to, legal expenses or attorneys' fees, court costs or fees, and expenses and fees for litigation management, electronic legal billing, service of process, depositions or examinations under oath, interest, copies of any public records, transcription services, appraisals, subrogation, private investigation, surveillance (excluding Helmsman special investigation unit on automobile and liability Claims), professional photography, expert witness analysis or testimony, accident reconstruction, engineering analysis and field investigation, hospital or other medical reports, medical examinations, medical or hospital bill review, PPO networks, Utilization Review, and Catastrophic Case Management (Florida only). The definition of "Allocated Loss Adjustment Expense" shall be amended when, and to the extent, necessary to bring the definition into compliance with applicable law.
>
> B. **Claim** means any monetary demand, occurrence, suit or Loss reported or transferred to Helmsman for Claims Administration under this Agreement.
>
> C. **Claims Administration** means the management, adjustment, investigation, evaluation, defense, negotiation, settlement or payment of Claims.
>
> D. **Claims Handling Charges** means the charges per Claim Type as set forth in Exhibit A.
>
> . . .
>
> F. **Customer** means the entity listed in the Specifications and includes its current subsidiaries, and any subsidiaries in which Customer acquires a majority interest during the term of this Agreement.
>
> . . .
>
> J. **Loss** means amounts payable as benefits or as damages.

(*Id.*, HEL000002-03.)

The HSA provided that Defendant "is directly responsible for paid Loss and ALAE and shall reimburse [Plaintiff] for all payments advanced as provided herein." (*Id.*, HEL000003.) These expenses would be "billed monthly to [Defendant] one month in arrears." (*Id.*) The HSA provided further detail about charges and payment:

> B. Each month, Helmsman will send Customer a statement showing the amounts owed Helmsman under this Agreement and indicating a due date which is 30-days after mailing. Payments by Customer of amounts owed Helmsman, shall be made by the due date indicated on the statement.
>
> C. Should any payment not be made by the due date, then, in addition to all other

> rights and remedies available to Helmsman, Helmsman shall be entitled to receive a late payment charge computed at a rate of 1 ½ percent per month on the overdue amount, for the actual days elapsed from the due date until the earlier of the date the payment is received by Helmsman from Customer.
>
> D. Should a dispute arise as to an amount due Helmsman based on Customer's good faith belief that Helmsman has, because of an administrative error, miscalculated the amount due, then Customer, after written notice to Helmsman indicating the nature and amount of the dispute, agrees to pay the amount due less the disputed amount, provided that if the disputed advance amount is resolved in Helmsman's favor, Customer shall remit to Helmsman such disputed amount

(*Id.*, HEL000007-08.)

Consistent with the definitions, Exhibit A to the HSA provided for the calculation of "Claims Handling Charges." (*Id.*, HEL000012.) The term of the HSA was continuous until terminated. (*Id.*, HEL000001-02.) The HSA could be amended through "written amendment . . . signed by [Defendant] and an officer of [Plaintiff]." (*Id.*, HEL000008.) The HSA provides that it "shall be construed and governed by the law of the Commonwealth of Massachusetts." (*Id.*, HEL000009.) The HSA was so amended several times. The latest amendment that is relevant here is Amendment 3. (Ellis Decl., ¶ 4, Ex. B, HEL000019-20.) Amendment 3 provided a new Exhibit A as of November 1, 2019, updating the calculation of the "Claims Handling Charges." (*Id.*, HEL000020.)

**B. <u>The Charges Incurred And Yadav's Failure To Pay</u>**

During the time period May 6, 2022 through November 10, 2023, Plaintiff issued a number of invoices to Defendant for services under the HSA. (Ellis Decl., ¶ 5, Ex. C.) The invoices each indicated a due date. *See, e.g.,* (*Id*. at HEL000035.) While Defendant received some credits and made some payments toward these invoiced amounts, Defendant failed to make payments in the full amounts of these invoices and never provided written notice that any of the charges were incorrect. (Ellis Decl., ¶¶ 5, 8.) Defendant did not pay $402,303.92 that was owed under the invoices. (Ellis Decl., ¶ 9.) Plaintiff demanded the payment of this balance. (Ellis Decl., ¶ 6, Ex. D.) Yadav has not made any payments on the outstanding invoice amounts. (Ellis Decl., ¶ 9.)

**C. <u>Entry of Default</u>**

On March 30, 2026, Plaintiff filed a Motion for Summary Judgment. *See* Doc. No. 25. Defendant failed to file any response to the motion. *See* Doc. No. 26. Following the hearing on Plaintiff's motion for summary judgment, the Court ordered: "Plaintiff Helmsman Management

Services may file a request for Clerk's entry of default, followed by a motion for default judgment after entry." *See* Doc. No. 29. Plaintiff requested entry of default on July 5, 2026. *See* Doc. No. 30. The Clerk entered the default of Defendant on July 20, 2026. *See* Doc. No. 31.

## IV. LEGAL STANDARD

Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court may enter a default judgment against any defaulted party. "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## V. ARGUMENT

The *Eitel* factors favor entry of default judgment in Plaintiff's favor. First, Plaintiff will be prejudiced if default judgment is not entered, as Defendant's refusal to participate in this case has left Plaintiff without any reasonable opportunity to recover the losses sought in its Complaint other than via default judgment. Second, as discussed below, Plaintiff's substantive claims are meritorious. Third, Plaintiff's Complaint is sufficient as Defendant answered the Complaint and never filed a motion to dismiss or motion for judgment on the pleadings. Fourth, the sum of money at stake in the action, while significant, is contractually mandated and flows from the very terms and conditions agreed by Defendant. Fifth, there is no dispute of material facts, as discussed below. Sixth, there is no evidence that the default resulted from excusable neglect. Seventh, the policy favoring decisions on the merits is insufficient to overcome the need for default judgment in this case.

### A. To The Extent Necessary, Massachusetts Law Applies To The Interpretation Of The Contract.

The HSA provides that Massachusetts governs the HSA. The California Supreme Court has identified "strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses." *Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 103 (2001) (internal quotations and citations omitted). California Courts generally rely on "the analytical approach

reflected in section 187, subdivision (2) of the Restatement Second of Conflict of Laws (Restatement)" to determine the enforceability of a contractual choice of law provision. *Washington Mut. Bank*, 24 Cal. 4th at 916. Thus:

> the court must first determine: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law.["]

*Id.* (quoting *Nedlloyd Lines B.V. v. Superior Court* 3 Cal. 4th 459, 466 (1992)).

A "reasonable basis" for a choice of law exists where "one of the parties resides in the chosen state . . . ." *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 899 (1998); Restatement (Second) of Conflict of Laws § 187. A "principal place of business, corporate headquarters, and operating center [creates] a sufficient relationship or basis to justify the" choice of a states law. *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1446 (2012). Here, there was a reasonable basis for the choice of Massachusetts law because that is where Helmsman is headquartered. (Ellis Decl., ¶¶ 3, 10, Ex. A, HEL000001.) Thus, there is a reasonable basis for the choice of law and it should therefore be enforced.

However, even if there was no reasonable basis for the choice of Massachusetts law, there is no conflict at all—let alone a *fundamental* conflict—with California law. Indeed, the elements of a breach of contract action are substantively identical in the two states. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) ("[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.") (citing *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830 (1968)); *Unum Grp. v. Benefit P'ship, Inc.*, 938 F. Supp. 2d 177, 185 (D. Mass. 2013) ("(1) the existence of an agreement supported by consideration; (2) that [the plaintiff] performed its obligations under the agreement; (3) that the defendant breached the agreement; and (4) that [the plaintiff] suffered injury as a result." (citing *Singarella v. Boston,* 342 Mass. 385, 387 (1961)). Because the elements are the same, there is no conflict of fundamental policy. Accordingly, Massachusetts law governs the HSA.

**B. <u>Defendant Breached The HSA By Failing To Pay Amounts Owed.</u>**

The elements of a cause of action for breach of contract are "(1) the existence of an agreement supported by consideration; (2) that [the plaintiff] performed its obligations under the agreement; (3) that the defendant breached the agreement; and (4) that [the plaintiff] suffered injury as a result." *Unum Grp.*, 938 F. Supp. 2d at 185 (citing *Singarella,* 342 Mass. 385, 387 (1961)). The undisputed facts here demonstrate that Defendant failed to perform its obligations under the legally-binding HSA, resulting in damages to Plaintiff of $402,303.92 plus objectively-calculated, contractually agreed late payment charges. As such, Plaintiff is entitled to judgment in its favor.

**1. Existence Of A Contract**

There can be no dispute that the HSA is a valid contract. It is supported by consideration. If the parties have "bound [themselves] to do something," there is sufficient consideration. *Graphic Arts Finishers, Inc. v. Bos. Redevelopment Auth.*, 357 Mass. 40, 43 (1970). Plaintiff agreed to provide services and Defendant agreed to pay for those services. (Ellis Decl., ¶ 3, Ex. A, HEL000003-05, 07-08.) Accordingly, the HSA bound the parties to act, giving rise to legally sufficient consideration. The terms of the HSA were definite, in writing, and the existence of the agreement to those terms is evidenced by Defendant's execution of the HSA and the relevant Amendment 3. Thus, there was a "'meeting of the minds' required for contract formation." *Nat'l Fed'n of the Blind v. Container Store, Inc.*, No. CV 15-12984-NMG, 2016 WL 4027711, at *9 (D. Mass. July 27, 2016) (quoting *Situation Mgmt. Sys. v. Malouf,* 430 Mass. 875, 878 (2000)). The parties acted under the HSA for a long period of time. Helmsman provided services under the HSA and Yadav paid for services. (Ellis Decl., ¶ 3.) In sum, the undisputed facts show that the HSA, inclusive of Amendment 3, constituted a valid contract.

**2. Plaintiff's Performance**

Plaintiff's performance under the HSA is clear from the undisputed evidence. "As a practical matter, it is usually easy for a plaintiff to assert, and offer a competent witness to say, that it performed its obligations or stood ready to perform them; and, to create an issue, in practice the defendant has to identify the respect or respects in which it claims that the plaintiff's performance fell short." *Amicas, Inc. v. GMG Health Sys., Ltd.*, 676 F.3d 227, 231 (1st Cir. 2012). In other words, the plaintiff must

show that "it had performed its end of the bargain," and the defendant must "creat[e] a factual issue as to whether [the plaintiff] had fulfilled its obligations." *Id*. at 232.

Plaintiff performed its obligations by performing the claim services contracted for in the HSA and invoicing Defendant. (Ellis Decl., ¶¶ 4, 5.) Indeed, that is the very crux of this action. Plaintiff invoiced Defendant for the services Plaintiff had performed. (*Id*., ¶ 5, Ex. C.) It never received any notice that the charges for these services were not owed. (*Id*., ¶ 8.) Performing the services and invoicing for them were explicitly Plaintiff's "end of the bargain." (Ellis Decl., ¶ 3, Ex. A, HEL000001-03, 07-08.) Plaintiff performed its duties under the HSA and Defendant breached its duties by failing to pay the amounts owed.

**3. Defendant's Breach**

Defendant's breach of its contractual duties is equally demonstrated by the undisputed facts. "To establish a breach, a plaintiff has the burden of proving the failure of the defaulting party to conform to one or more of the contract's material terms." *In re JPMorgan Chase Mortg. Modification Litig.*, 880 F. Supp. 2d 220, 233 (D. Mass. 2012). "A term is material when it involves 'an essential and inducing feature' of the contract." *Id*. (quoting *Buchholz v. Green Bros. Co.*, 272 Mass. 49, 52 (1930)). "Essential and inducing features of a contract are provisions that are 'so serious and so intimately connected with the substance of the contract[ ]' that a failure to uphold the provision would justify the other party walking away from the contract and no longer being bound by it." *G4S Tech. LLC v. Massachusetts Tech. Park Corp.*, 479 Mass. 721, 734 (2018) (quoting *Buchholz*, 272 Mass. at 52). Unsurprisingly, Massachusetts courts have consistently found that failing to pay substantial amounts owed under the contract is a material breach as a matter of law. *See Buchholz*, 272 Mass. at 52 ("it is apparent that the obligation of the defendant to make the monthly payments was an essential and inducing feature of the contracts, and that the defendant's breach in this particular went to the root of the contracts"); *Dialogo, LLC v. Bauza*, 456 F. Supp. 2d 219, 225 (D. Mass. 2006) (employer's "primary obligation under the contract was to pay [the employee] for the work he did").

Here, the HSA required Defendant, in unambiguous terms, to pay the amounts that were invoiced. Specifically,

> Each month, Helmsman will send Customer a statement showing the amounts owed Helmsman under this Agreement and indicating a due date which is 30-days after

> mailing. Payments by Customer of amounts owed Helmsman, shall be made by the due date indicated on the statement.

(Ellis Decl., ¶ 3, Ex. A, HEL000007.) Thus, while Plaintiff had the duties to manage claims made against Defendant and submit the invoices, Defendant's central obligation was to pay Plaintiff for those services. However, despite Plaintiff performing the services and invoicing for them, Defendant has failed to pay the outstanding, substantial, principal balance of $402,303.92. (Ellis Decl., ¶¶ 5, 9.) Defendant provided no written notice, as required by the HSA, that these charges were incorrect or improper. (Ellis Decl., ¶¶ 3, 8, Ex. A, HEL000008.) The promise of payment for the services performed was manifestly, and as a matter of law, the "inducing" feature of the HSA. Without that promise of payment, there would be no reason for Plaintiff to agree to perform the services. Thus, in line with routine findings of courts applying Massachusetts law, Defendant's failure to pay as required is a material breach of the contract.

The requirements of the HSA's late payment charge provision is also unambiguous and breached by Defendant's non-payment. The HSA again is clear that the invoices would indicate a due date that was 30 days after mailing of the invoices. (Ellis Decl., ¶ 3, Ex. A, HEL000008.) The invoices Plaintiff sent did just that. (Ellis Decl., ¶ 5, Ex. C.) "Should any payment not be made by the due date, then . . . Helmsman shall be entitled to receive a late payment charge computed at a rate of 1 ½ percent per month on the overdue amount, for the actual days elapsed from the due date until the earlier of the date the payment is received . . . ." (Ellis Decl., ¶ 3, Ex. A, HEL000008.) Thus, when Defendant failed to pay full amount of the respective invoices, Plaintiff was entitled to the contractually-calculated amount in late payment charge. Defendant's failure to pay these charges, separate from the principal balance, is a continuing breach of contract.

**4. Damages**

The measure of Plaintiff's damages is also established by the undisputed facts. "The basic principle of contract damages is that the aggrieved party should be put in as good a position as if the other party had fully performed." *Quinn Bros. v. Wecker*, 414 Mass. 815, 817 (1993) (citation and internal quotation marks omitted). Plaintiff's damages here come in the form of the unpaid $402,303.92 principal balance and in the objectively-calculated, contractually agreed late payment charges.

The principal balance of $402,303.92 is necessary to place Plaintiff in the position it would be in had Defendant performed. The HSA called for Defendant to pay the ALAE and the Claims Handling Charges that were invoiced. (Ellis Decl., ¶ 3, Ex. A, HEL000002-03, 07-08.) If Defendant had paid these amounts, Plaintiff would have received $402,303.92. Thus, this amount provides a proper measure of contractual damages.

The logic supporting the late payment charge is equally straightforward. The HSA required, and continues to require, that Defendant pay the "late payment charge computed at a rate of 1 ½ percent per month on the overdue amount, for the actual days elapsed from the due date until the earlier of the date the payment is received . . . ." (Ellis Decl., ¶ 3, Ex. A, HEL000008.) The date of the judgment is the date at which Defendant's lack of performance will be established and Plaintiff's damages from that date of performance will be fixed. To place Plaintiff in the position it would be in with full performance thus requires payment of the late payment charge calculated to the day of the judgment.

Massachusetts courts have awarded breach of contract damages under similar provisions. *See, e.g., Life Fitness v. Jamer Fitness, Inc.*, No. 042967, 2005 WL 3669847, at *3 (Mass. Super. Dec. 5, 2005) (entering judgment for "principal plus late fees and interest at the contract rate"). The Massachusetts prejudgment interest statute provides that "upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established[.]" Mass. Gen. L. ch. 231, §6C. In *Spiritual Trees v. Lamson & Goodnow Mfg. Co.*, the court had already awarded "late fees" calculated at "one and one-half percent per month[.]" 424 F. Supp. 2d 298, 299 (D. Mass. 2006). The court declined to award further statutory prejudgment interest because the "late fee" "certainly has the feel of interest[ and] at approximately eighteen percent per year, the late fees clearly compensate [the plaintiff] for its inability to use the commissions while they remained unpaid." *Id.* at 301. The jury that had awarded the "late fee" "effectively made [the p]laintiffs whole in the same fashion as prejudgment interest pursuant to section 6C is intended to do." *Id.* at 302.

That principle applies here as well under the precise same method of calculation. The late payment charges are not excessive and are commensurate with interest, providing a relationship to Plaintiff's inability to utilize the unpaid funds. *Cf. In re 201 Forest St. LLC*, 409 B.R. 543, 569 (Bankr.

D. Mass. 2009) (applying a 5% late fee per month (rather than contractual 10%) even with "no credible evidence of" a relationship to actual damages). As of March 20, 2026 the late payment charge applicable to the principal here was $198,449.38 (Ellis Decl., ¶ 7). As of the filing of this motion, the late fees have further accrued to $226,026.49 plus $198.39 per day after August 6, 2026.

## VI. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests the Court enter default judgment in its favor and against Defendant.

Dated: August 6, 2026

MAYNARD NEXSEN LLP

By: */s/ James J. Hockel*
NICHOLAS J. BOOS
JAMES J. HOCKEL